[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff-wife initiated this dissolution action by filing her complaint with the Superior Court on July 15, 1988, seeking a dissolution of the marriage on the ground of irretrievable breakdown. On July 20, 1988, the defendant filed his answer admitting the allegations of paragraphs 1 through 6 of the complaint. In addition, he filed a cross-complaint also alleging the irretrievable breakdown of the marriage.
The following findings of facts, conclusions and orders are entered.
1. The parties married in Myczynec, Poland on July 8, 1967.
2. Both parties have resided continuously within this State for more than one year prior to the filing of the complaint.
3. There are four minor children born to the parties during the marriage whose names and dates of birth are as follows:
Krystian Peter Gieryk born July 31, 1975;
Michelle Joanne Gieryk born September 26, 1976;
Andria Drystyna Gieryk born April 3, 1981; and
Aleksandra Isabelle Gieryk born February 16, 1986.
4. No assistance was received from the State of Connecticut or any political subdivision thereof by either party or any of the children.
5. The marriage has broken down irretrievably with no reasonable expectation of a reconciliation.
6. Plaintiff and defendant were both born in Poland. Plaintiff, forty-four years of age, migrated to this country in early 1966 and was working in a factory in West Haven in 1967 when she decided to return to her native Poland to search for a husband. As previously stated, she met the defendant and they were married on July 8, 1967. The defendant was reunited with his new wife in this country in February of 1968. The defendant is forty-seven years old. He was a male nurse in Poland receiving a nursing degree in 1964. In the United States he became employed at the West Haven Veterans Hospital as a nursing assistant and at the time of the CT Page 6967 hearing held a position of medical technician.
7. The plaintiff, after her marriage and during the early years thereof earned her GED after learning to speak English. The defendant on the other hand has had far superior training and education even in this country. While working he was able to further his education by evening attendance in classes culminating in the award of an A.A. degree from South Central College in 1982 and a B.S. degree from New Hampshire College in 1983.
8. Mrs. Gieryk was a good and faithful wife and mother throughout the marriage. She worked outside the home as much as she could without neglecting her husband, the children as they came into this world and grew up, and the family home. I do not fault her for the breakdown of the marriage.
9. The defendant was the dominant and domineering person in this family. I did not find his testimony to be trustworthy and thus acceptable. The mother's statements were more credible and acceptable. The defendant's accusations of acts of infidelity were not proved. His accusations of her undermining his authority over the children were unfounded. On the other hand, he did very much undermine her authority, demeaned her in front of the children. He refused to support her in her efforts to assist the children in their development and upbringing. He actively instead sought to alienate the children from her and draw them to himself.
10. The defendant was guilty of unnecessarily cruel behavior towards the plaintiff during the marriage. This couple was blessed with the birth of four children and could have and should have made a good and rewarding life to all concerned. I believe the defendant defeated this reality from developing to its fullest potential. The cause of the irretrievable breakdown was the defendant's conduct toward the wife. People he could not manage or control he would discard and attempt to forbid any association between his family and them.
11. The principal asset acquired by this family after almost 24 years of marriage is the family residence, a three family home located at 26-28 Whittlesey Avenue in the Westville section of New Haven. The plaintiff and the defendant originally had purchased a house in Bethany in 1973. The defendant was the dominant person managing the family finances and those of relatives. He was CT Page 6968 somewhat inadequate in the investment field of operations resulting in investments that fared poorly. He convinced the plaintiff to sell the home in Bethany and to move to the residence in New Haven where they occupied one apartment and rented the two other apartments.
12. The plaintiff has been employed in a factory, has cleaned houses and most recently, at the times of the court hearings, was seeking to promote her grocery store and catering business. Probably because of the state of the economy she was struggling to keep the business going.
13. As between the two, the plaintiff is less educated, less skillful and knowledgeable. He has the better job and with the superior education should do much better in his earnings and in accumulating assets in the future. She is as determined and hard working as he but I believe she is not up to his level for achieving material possessions. He does not need her help in any way but she does require his to survived with their child, Aleksandra, after this dissolution.
14. The plaintiff's business income is shown on her financial affidavit of February 13, 1991, as being a net $50.00 per week. She accumulates another net of $55.00 per week. This will have to be made more efficient and undoubtedly could with some professional assistance. The defendant, on the other hand, has a steady wage income which on his financial affidavit of February 13, 1991, was reported as $436.50 gross and $286.50 net. In addition, he showed $230.70 per week rental income from the family residence. His weekly expenses of $915.88 have to be trimmed, if they are real, and this I find hard to accept. The liabilities listed on his affidavit are of his own doing and should be his sole responsibility.
After giving due consideration to the provisions of the Conn. Gen. Stats. relating to alimony, division of family assets, custody and support of minor children and counsel fees especially the factors enumerated therein, the following orders are entered by the Court:
a. A decree dissolving this marriage may enter on the ground of irretrievable breakdown.
b. Sole legal and physical custody of the children, Krystian, Michelle and Andria is granted to the CT Page 6969 defendant-father.
b. Sole legal and physical custody of the child, Aleksandra is granted to the plaintiff-mother.
c. The parties are reported by counsel for the children to have agreed upon a specific visitation schedule which counsel recommends and which is concurred in by the guardian ad litem appointed during these proceedings by the court. I also find the same to be fair and reasonable and especially so when the parties themselves agree to the visitation schedule. This, I believe, is always to be preferred.
 Therefore, the visitation schedule set forth in paragraphs 5 a, b, c and 6 of the "Written Recommendation of Counsel For Minor Children" filed April 2, 1991 is ordered.
 The parents are requested to be reasonable and considerate of one another in the implementation of the above order. They are ordered not only to seek to facilitate such visitations but to also consider the best interests of the children to be paramount and so, to avoid at all times any expressions of ill-will, enmity or disparagement of the other parent before the children.
 Either party may seek the assistance of the family relations division to mediate any disputes or complaints. If mediation fails, the family relations division may refer the matter to the court, if deemed advisable.
d. The defendant shall pay as periodic alimony the sum of $1.00 per year to the plaintiff until her remarriage, cohabitation pursuant to statute or the death of either party.
e. It is ordered that the plaintiff shall retain as her sole property the furniture that she purchased and paid for, as well as all of her furniture, appliances and other equipment and supplies used in her catering grocery store business and finally any and all personal effects presently with her or located at the family premises. All other personal property is declared to the sole property of the defendant.
f. The plaintiff shall pay $1.00 per year to the defendant for the three minor children's support during the CT Page 6970 minority of each child. No alimony is awarded to the defendant.
g. The defendant shall pay $75.00 per week to the plaintiff for the support of the minor child, Aleksandra, during her minority or until she shall become emancipated whichever occurs first.
h. The defendant is ordered to maintain Blue Cross/Blue Shield, Major Medical, Dental and Prescription health insurance for the minor children. He will also assist the plaintiff in obtaining coverage for herself under such insurance so long as permitted by law. The defendant shall be responsible for the entire premium cost for himself and the four children and for one-third of the premium cost allocated to the plaintiff for the first two years of her coverage. Thereafter she shall be responsible for the full premium cost for herself. All uninsured and unreimbursed such expenses for the children shall be shared one-third by the plaintiff and two-thirds by the defendant.
 All unreimbursed and uninsured ophthalmological, orthodontic, psychological and psychiatric expenses for the children shall be approved by both parents which approval shall not be unreasonably withheld and shall be paid one-third by the plaintiff and two-thirds by the defendant. This is subject to C.G.S. 46b-84 (c).
i. Each party is awarded as his or her own property the automobile listed on the respective financial affidavits.
j. The defendant is ordered to pay the $100.00 pendente lite order to the plaintiff for the thirteen months of July 1990 to and including July 1991. This pendente lite order thus survives this judgment. Unless paid sooner, payment shall be made out of the defendant's share of the net proceeds.
k. The defendant shall retain his U.S. Government Insurance policy of $10,000.00 and shall immediately designate the four children as irrevocable beneficiaries of said insurance until the youngest reaches the age of majority. He shall furnish proof of the existence of such insurance annually to the plaintiff commencing January 1992.
1. The family premises at 26-28 Whittlesey Avenue shall be put up for sale immediately. If the parties are unable CT Page 6971 to agree upon a realtor or a selling price, the matter, upon proper motion, shall be returned to the court for hearing so that the court may make proper arrangements for the sale.
m. Upon the sale of the property, the net proceeds of the sale shall be apportioned as follows: to the plaintiff 35% and to the defendant 65%. The net proceeds shall be determined by subtracting from the gross selling price, the customary administrative or closing expenses of the sale, any unpaid mortgages, real estate taxes, home insurance premiums, penalties and late fees or other costs and fees connected with any defaults. Any liens or attachments as a result of either of the parties shall be chargeable to his or her share of the net proceeds.
 From the net proceeds the following shall be deducted and paid over to the other party except as herein otherwise specifically directed.
 1. Mortgage payments of principal and interest shall be deducted from the defendant's share and added to the plaintiff's share.
 2. Unpaid amounts of the pendente lite orders of $100.00 and $600.00 shall be treated as in 1.
n. With the exception of any mortgage liabilities which have been provided for above, the parties shall be responsible for all liabilities shown on their respective affidavits and shall hold the other harmless from any such liability.
o. Paragraph n above is further modified to provide that the defendant, out of his share of the net proceeds of the sale of the house, shall pay $2,500.00 on account of the plaintiff's counsel fees.
p. The parties shall pay equally the legal fees of the counsel for the children and the fees for services rendered by the guardian ad litem. These fees shall be recalculated at $100 per hour. Payment shall be made from the net proceeds from the sale of the property and the fees are not to be dischargeable in bankruptcy. The defendant shall pay an additional $305.00 to the guardian ad litem. This amount is the balance due from the defendant on the initial order of the court to pay a retainer to the guardian. CT Page 6972
 Counsel are requested to collaborate in the preparation of the judgment file.
JOHN OTTAVIANO, JR. STATE TRIAL REFEREE